lieved that the injuries to the plaintiff were as serious as her evidence made it appear that they were, it is quite clear that the verdict was not excessive.

For all these reasons, we conclude that the judgment and order were correct, and should be affirmed, with costs to the respondent. All concur, except VAN BRUNT, P. J., dissenting.

VAN BRUNT, P. J. I dissent from the opinion of the court in this case. I do not think that the rule laid down by the opinion in regard to the hotel appliances of the defendant's steamer is correct. No more care is required in respect to those appliances than is required of an hotel keeper in taking care of his guests upon land. In that respect the relation of the traveler to the carrier is precisely the same as that of the guest of an inn to the innkeeper. In addition, however, to board and lodging, the carrier affords the passenger transportation; and, in respect to the appliances for transportation, the carrier is bound to exercise the utmost care and diligence.

---

CASPER v. DRY-DOCK, E. B. & B. R. CO.

(Supreme Court, Appellate Division, First Department. December 10, 1897.)

STREET RAILROAD—DEFECTIVE TRACK—INJURY TO TRAVELER.
  A foot passenger was injured, in crossing a city street, by a loose rail of a surface-car track. It appeared by several witnesses that the track had been carefully inspected that morning, and appeared all right until shortly before the accident occurred, when the absence of two spikes was seen, and at once reported to the track master, who had it repaired promptly and within an hour after hearing of it, but not until the accident had happened. The locality was always crowded with heavily loaded trucks, which might have sprung the rail. The track was comparatively new, and was well laid. Held, that the facts rebutted any presumption of defendant's negligence.
  Williams and O'Brien, JJ., dissenting.

Appeal from trial term.

Action by Sigmund R. Casper against the Dry-Dock, East Broadway & Battery Railroad Company. From a judgment entered on a verdict, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

John M. Scribner, for appellant.
Otto Horwitz, for respondent.

INGRAHAM, J. This action was brought to recover damages for injuries sustained by the plaintiff in crossing the track of the defendant's road, at the corner of Lispenard street and Broadway, about 12 o'clock on February 2, 1895. The plaintiff's account of the cause of the accident is that he was walking on the westerly side of Broadway, towards Canal street, about noon, or a little after, on the 2d of February, 1895. That as he was crossing Lispenard street on the cross walk he had passed the southern rail of the track of the defendant company, and as he passed the northern rail of the track

"the heel of my shoe was pinioned down by a track which threw me over on this side,—on the right side; threw me back.   *   *   * I stepped with the inside—the instep, this part here—of the shoe on the track, and this heel (the right heel) was pinioned between the track and the paving stones.   The track was loose, and the spikes were out, and, when I put my weight on this rail, the rail went down, and held my heel down so I was swung back on my side.   I say the track was loose, and the spikes were standing out.   I mean the spikes protruded.   *   *   *   I saw two spikes sticking up, *   *   *   I should judge, three inches,—two and a half to three inches.   *   *   *   Pretty near all out,—maybe the whole length; I could not exactly tell."   It further appeared by the testimony of the plaintiff and the defendant's witnesses that this corner of Broadway and Lispenard street was a very crowded corner, a stream of people going in both directions constantly, and a stream of trucks and wagons using this street over this piece of track upon which the plaintiff alleges he was injured.   About the time of the accident several trucks were in the street.   There is no evidence to show, nor proof of facts from which the inference could be drawn, that this track had been loose for any period of time prior to the occurrence testified to by the plaintiff, nor that this track had remained loose, or that these spikes protruded, for any time prior to the plaintiff's injury; but we have the fact that the rail was in such a condition that when a man, weighing in the neighborhood of 179 pounds, stepped upon it, it was pressed down so that the spikes protruded above the rail two and a half or three inches, and this in a locality where there was a constant stream of heavily loaded trucks and wagons passing, any one of which striking these spikes would bend them off or force them down.   The testimony of the plaintiff as to the condition of the track was uncorroborated.

On behalf of the defendant, the track master of the road was called, who testified that about 9 o'clock on the morning of February 2d, the day in question, he visited this place; that he went over all the road on that day to see if any salt or sand was required at the curves; that he noticed this curve at the corner of Broadway and Lispenard streets for that purpose; and that at that time there was no indication of the spikes being out, or that the track was not in perfect condition.   He testified that if the spikes had been out or the track loose he would have noticed it, as his attention was particularly directed to the curve of the track to see if any salt or sand was required.   The inspector of the defendant's road testified that at half past 10 o'clock he visited this corner, remained there half an hour, watched during that time the operation of the cars upon this track, and, while not making a particular examination of the track itself, he said that he would have noticed if the rail had been loose or if the track was out of repair; that about half past 10 he left this locality to look after some other portion of the road, and returned about 11 o'clock; that immediately upon his return he noticed that two spikes had in some way been drawn out of the rail, so that the spikes themselves were absent; that he at once wrote to the track master, and gave it to one of the conductors of the car that passed, informing him of

the absence of these spikes; and that this was shortly after 11 o'clock. It also appeared from the testimony that it was possible for a heavily loaded truck in the street to catch the flange of the wheel in the track, and by lifting it up loosen the spikes so that they would come out; and, as before stated, the evidence is uncontradicted that at this point there was a constant stream of heavily loaded trucks and wagons using this street. It further appeared that this note of the inspector was delivered to the track master about noon, or shortly after; that the track master immediately sent two workmen with the necessary spikes and materials to repair the track, and that the track was repaired and in good order before 1 o'clock; that the track master visited the locality about 1 o'clock in the day, and found the track repaired. It further appeared by the testimony of the policeman stationed at that corner that it was his duty to watch the condition of the track in this locality, and report to his superiors if the track became out of order; that he was on duty at the time of this accident, as he had been on duty before on that day and on previous days, that being his regular place; and that he had never noticed any difficulty with the track at this point or that it was out of repair. The track was 4 years old, had been well laid, and there is no evidence to show that it was in any way worn out or required any renewing; the evidence being that the ordinary life of a track of this kind is from 10 to 12 years.

After all the testimony was in, the defendant asked the court to direct a verdict for the defendant upon the ground that no negligence on the part of the defendant had been proven, and upon the further ground that there was not a particle of evidence on the part of the plaintiff showing that the alleged defect in this track had existed for a space of half a minute prior to the accident in question, if it ever existed. This motion was denied by the court, to which the defendant excepted. The court then charged the jury that, "in order to recover, the plaintiff must prove to your satisfaction, by a preponderance of evidence, that the accident happened solely through the negligence of the defendant"; that "negligence is want of ordinary care, and ordinary care is such care as is fairly proportioned to the danger to be avoided or risk to be incurred, judging by the standard of common prudence and experience"; and that the "negligence of the defendant is the gist of this action, and the plaintiff in this action is not entitled to recover unless the jury find that the defendant was actually guilty of negligence in the construction or maintenance of the track in question."

This statement of the law in the charge seems to be correct, as applied to an action of this character. In Worster v. Railroad Co., 50 N. Y. 205, Church, C. J., says:

"We are to assume that the defendants had a lawful right to lay their tracks in the street where the injury occurred, but this right carries with it the obligation to lay the tracks in a proper manner, and keep them in repair, and, if an injury occurs by reason of neglect in either of these respects, the defendants are liable in damages. * * * The duty of remedying the defect was affirmative and absolute. Notice to the defendants of the defect was not necessary. It was their duty to know it. It was patent, and an omission to know that such a defect existed was prima facie negligence as much as an omission

to repair after notice. The facts tended to prove that the defect had existed for some days. * * * The presumption of knowledge arises from the existence of the defects themselves. The plaintiff was only required to show that the injury resulted from the road being out of repair, and, if circumstances existed showing absence of negligence, it was for the defendant to prove them. The presumption of negligence was complete when it appeared that defects existed and an injury was caused thereby."

In Schild v. Railroad Co., 133 N. Y. 449, 31 N. E. 327, Gray, J., in delivering the opinion of the court, says:

"The defendant was authorized and had the right to put down its rails in and upon the street, and was under no liability, by reason of anything in the grant from the common council, to keep the street pavement between its tracks in repair. But it was under an obligation, which is necessarily implied as to every use of a highway, so to construct and to maintain its tracks as that, by the exercise of a reasonable care and supervision with respect to them, no danger might be occasioned to the public in its use of the highway. * * * The highway or street used for rails must be maintained, as nearly as possible, as fit for the use of the public who travel on foot or in vehicles as it was before, having due regard to the necessity for the rails being there."

The liability upon the defendant is thus one of care to keep its rails in such repair that persons using the highway will not be injured. The defendant, however, is not an insurer. It is not absolutely liable to all persons using the highway in which its rails are laid, but it is bound to exercise care in their construction and maintenance to prevent such a condition of the highway as would cause injury to those rightfully using it. This obligation of the defendant is twofold: First, properly to construct its track; and, second, after so constructed, to maintain it in a safe condition; and liability must be predicated upon a neglect to perform this duty. In this case there is no evidence to show that the track was not a properly constructed track, presenting any greater inequality in the street than would be presented in any street paved in an ordinary manner with stone, or that the plaintiff sustained any injury in consequence of improper construction. Was the evidence, taken as a whole, sufficient to show that the defendant was negligent in keeping this properly constructed track in repair, or did the evidence in favor of the defendant so strongly preponderate that the finding of negligence was so clearly against the weight of evidence as to make it our duty to set the verdict aside?

The plaintiff's account is that in crossing this track his foot caught in the rail; that he fell; and that while upon the ground he noticed this condition of the spikes, as before stated. Under the rule announced in the cases before cited, this made out the plaintiff's prima facie case; and, if there were any facts to show that the condition of the rail at the time was not the result of the defendant's want of care, it was for the defendant to show it. As tending to show that the defendant was not negligent in not keeping this track in repair, it was testified to that the track had been examined by the track master of the defendant road at 9 o'clock that morning, without the defective condition being discovered, and again by the inspector between 10 and half past 10; that at 11 o'clock, when the inspector returned, the absence of these two spikes was noticed, and word was at once sent to the track master of that fact, when it was at once

repaired. The additional fact was proved that a heavy truck using this street might cause the rail to be so lifted by the flange of the wheel catching upon the rail as to draw the spikes out, and there is the apparent improbability of the track remaining in the condition testified to by the plaintiff, in the middle of a road used as this street was testified to have been used, without having either the spikes driven in or bent off in such a way as to at once attract attention, with the evidence of the policeman whose duty it was to discover any defect in the track that none was observed by him. Unless we are absolutely to disregard all this evidence given by the defendant, and the improbability of the track remaining in that condition for any length of time, when we consider the traffic in the street, it would seem that any presumption as to the condition of the track for a sufficient time to throw upon the defendant the inference of negligence, because it had not been repaired, was rebutted. The distinction must always be borne in mind between the duty of a common carrier of its passengers and the duty of a railroad company occupying a public street to those using the street. We are not dealing now with a common carrier of passengers in relation to its duty to its passengers, and what is said in the cases as to the duty of such a carrier, and the evidence necessary to sustain the charge of negligence, in such a case does not apply. The burden was upon the plaintiff to show that this defendant was negligent in the maintenance of its track, and that such negligence of the defendant caused the injury. The duty of the defendant as to this track was that it should be diligent in keeping it in repair and in a safe condition. An injury occasioned to the track by a truck passing over it, or in any other way, must be repaired by the railroad company within a reasonable time. It cannot shelter itself behind a plea of not having notice. Its duty of inspection requires that it should inspect the track in such a way that any defect in it could be discovered, but the law does not require of it the performance of an impossibility. It does not require that it should inspect each part of its track every moment. Upon this evidence there could be no presumption that the defendant was negligent in not ascertaining this condition of the track. In regard to making the repair to the track, the same rule as to the duty of the railroad company exists. It was bound to take steps at once to repair the track. It was, however, manifestly impossible for this company to have at each corner of the streets through which its road passes a supply of spikes and men to make such repairs; and there is no evidence to show that such incidents were common, or that there was anything that would justify the company in assuming that such an accident to this track was likely to occur. There is nothing to show that the means adopted by the inspector when he discovered the absence of these spikes, or the action of the track master after the information had been received by him, was not diligent and proper. There was no evidence to show that notice could have been given in any quicker way than that given by the inspector; and, upon the track master receiving the information, a cart, with the necessary workmen and tools to make the proper repairs, was dispatched in 10 or 15 minutes, and reached the place 20 minutes afterwards,

when the repairs were made, and the track in fact repaired in less than 2 hours after its condition was first discovered. It seems to me that there can be no doubt that these facts, which were undisputed, show absence of negligence on the part of the defendant, and rebut any presumption of negligence which the existence of the defect implies. These facts which rebut such presumption were not, as in the case of Volkmar v. Railway Co., 134 N. Y. 418, 31 N. E. 870, proved solely by one witness, whose duty it was to examine the defendant's road. Stress is laid in that case upon the fact that the witness did not testify that he examined the bolt and clip which fell upon the plaintiff, and that he did not tell how often he passed over the track, or to what extent he examined the bolts, but only stated that he performed his duty to the best of his ability; and it was held that there was not sufficient evidence to remove the presumption which necessarily followed from the established fact that the bolt was broken, and that in that particular the structure was out of repair and dangerous. Here the evidence was much more satisfactory, and we think that any presumption of the defendant's negligence was entirely rebutted by the facts proved. The verdict of the jury that the defendant was negligent was so opposed to the weight of evidence that the verdict should have been set aside.

The judgment is therefore reversed, and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and PATTERSON, J., concur.

WILLIAMS, J. (dissenting). The action was brought to recover damages for personal injuries to the plaintiff, alleged to have been caused by the negligence of the defendant. The accident in which the injuries were received occurred about noon of February 2, 1895, at the junction of Broadway and Lispenard streets, in the city of New York. The defendant's track in approaching Broadway from the west, along Lispenard street, began to curve towards the north as it passed the cross walk over Lispenard street, along the west side of Broadway. There was serious controversy on the trial as to the manner in which the accident occurred, and as to the nature of the defect in the track of defendant's road, at the place where the accident occurred. The plaintiff testified that he walked northerly, along the westerly sidewalk, on Broadway, and started to cross Lispenard street; that he passed over the southerly rail of defendant's track, and stepped with his right foot upon the northerly rail; that this rail was loose, the spikes being partially out, and the rail settled down under his weight; that his heel was caught between the loose rail and the paving stones; and that he was thrown down, and received the injuries to recover damages for which this action was brought. The defendant claimed that there was no loose rail at all; that, while there were two loose spikes in a rail at the place where the accident occurred, still the rail was held solid in its place by the other spikes, and it could not settle down under the weight of a man; and that the plaintiff slipped and fell, instead of his foot getting caught between a loose rail and the paving stones.

No witness was called or sworn for plaintiff excepting himself. Several witnesses were sworn in behalf of defendant, who testified as to the real condition of the track, and plaintiff's statements, just after the accident, with reference to the cause of his falling and being injured. No claim was made that the plaintiff was guilty of contributory negligence. The whole controversy was over the question as to whether the defendant was guilty of negligence which caused the accident and injuries to the plaintiff. The case was submitted to the jury under a charge which correctly stated the principles of law applicable to the questions to be determined, and the jury found for the plaintiff, fixing the damages at $1,500. We think, upon the evidence, that the jury had a right to find that the accident occurred as sworn to by the plaintiff, and that the cause of the fall was the plaintiff's foot getting caught between a loose rail in the track and the paving stones. This finding necessarily involved a conclusion that there was such a defect in the track as claimed by the plaintiff,—a rail so loose as to settle down about two inches, under the weight of a man stepping upon it. The verdict can be supported upon no other theory. There was a sharp conflict upon this subject between the plaintiff, on the one side, and defendant's employés (the inspector, the track master, and the two men sent to repair the track after the accident) and the two policemen. The jury were called upon to believe the one side and discredit the other. They could not find that the plaintiff was thrown down by getting his foot caught beside a loose rail, unless there was such a loose rail. The defendant conceded that there were two loose spikes in the rail. They may have been loosened by the passage over the rail of cars, trucks, or other heavy loads; but the defendant claims that the rail was secured in its place by other spikes, which were undisturbed, and that the weight of a man stepping on the rail could not settle the rail down at all. If the rail did not settle down, then the plaintiff's fall was not chargeable to that defect in the rail. It was the province of the jury to believe the plaintiff and disbelieve the several witnesses for the defense. This being so, the fact was found by the jury that there was such a defect in the rail as plaintiff testified to, and his fall and subsequent injuries were the result of his foot being caught between that loose rail and the paving stones.

The only remaining question is whether the jury had a right to find the defendant guilty of negligence in permitting this defective condition of the track to remain without repairing it,—whether there was sufficient evidence to support such a finding. The duty of the defendant was to exercise ordinary care in keeping its tracks in repair, so as to prevent injury to persons passing over them along the streets. Volkmar v. Railway Co., 134 N. Y. 418, 31 N. E. 870. While, in negligence cases, the plaintiff has the burden of proof upon the issue of defendant's negligence, yet, in case of accidents upon the tracks of a railroad laid along the streets of a city, it is well settled that the existence of a patent, visible defect in the tracks, which causes any injury, raises a presumption of negligence on the part of the company in keeping the tracks in repair. Worster

v. Railroad Co., 50 N. Y. 203; Volkmar v. Railway Co., above.    In the Worster Case it was said:

"We are to assume that the defendants had a lawful right to lay their tracks in the street where the injury occurred, but this right carries with it the obligation to lay the tracks in a proper manner, and keep them in repair, and if an injury occurs, by reason of neglect in either of these respects, the defendants are liable in damages. The defect was immediately connected with the track, and was plainly visible to the employés of the defendant, who were constantly operating the road. The duty of remedying the defect was affirmative and absolute. Notice to the defendants of the defect was not necessary. It was their duty to know it. It was patent, and an omission to know that such a defect existed was prima facie negligence, as much as an omission to repair after notice. The facts tended to show that the defect had existed for some days. * * * The presumption of knowledge arises from the existence of the defects themselves. . The plaintiff was only required to show that the injury resulted from the road being out of repair, and, if circumstances existed showing absence of negligence, it was for the defendant to prove them. The presumption of negligence was complete when it appeared that defects existed and an injury was caused thereby."

This is a very clear statement of the law applicable to this case. The defect here existed, and injury resulted therefrom. It was a defect immediately connected with the track, and plainly visible to the employés of the defendant, who were constantly operating the road. Notice to the defendant was not necessary. It was the duty of the defendant to know it. The presumption was with the plaintiff, and it was the duty of the defendant to overcome this presumption by proof that it was not negligent, but that it used reasonable care in repairing the defect. The defendant sought to accomplish this by showing that the defect had only existed for 40 minutes, and that sufficient opportunity was not thus afforded to make the repair before the accident occurred. Here, however, we are met again with the question of the credibility of the defendant's witnesses. They testified that there was no such defect as claimed by the plaintiff,—a loose rail that settled down under the weight of a man stepping upon it,—but this was contradicted by the plaintiff. We have already determined that the jury had a right to believe the plaintiff, and to discredit the defendant's witnesses on this subject. Defendant's witnesses testified that they did not observe any defect, even the loose spikes, in the morning earlier than 11:20 o'clock. Were the jury obliged to believe this evidence, having already discredited the witnesses on the subject as to the nature and extent of the defect? Might they not consider, further, as a reason for disbelieving their evidence, that the nature and extent of the defect was such as could not well spring into existence at once or in a few minutes? The spikes might be loosened in a short time, but if the rail was so loose as to settle, under the weight of a man stepping on it, two inches, would such a defect be likely to have been produced in a few minutes? Would it not be the result rather of hours and days? The plaintiff had, as bearing upon this subject, the presumption of negligence in his favor, and the probabilities arising out of the nature and extent of the defect, while the defendant had the evidence of some of its witnesses that the defect (which alone they claim existed) was not observed until 11:20 that morning, about 40 minutes before the accident. Upon this evi

dence the jury found for the plaintiff, which was, in effect, a finding that the defendant had not overcome the presumption of negligence by proof that the defect had existed for so short a time prior to the accident as that reasonable opportunity was not afforded defendant to repair the defect. It seems to us the jury had a right to come to this conclusion, in view of the evidence, and that the court could not interfere with such finding. In the Volkmar Case, above, a similar condition of things was presented. The injury there resulted from a fall upon plaintiff of an iron plate or clip with a part of a broken bolt from defendant's elevated structure. It was held that negligence was to be presumed from the existence of the defect and the injury resulting therefrom; and that the defendant had the burden of rebutting that presumption. Evidence was given by an employé of defendant as to his examination of the structure to the best of his ability, and that he failed to discover any defect. The court of appeals held the evidence given was not sufficient to overcome the presumption, but, even though it was sufficient for such purpose if believed, the question of credibility of the witness would still be involved and was a question for the jury; and the conclusion was that the question of negligence should have been left to the jury. The court very properly submitted the question of defendant's negligence in this case to the jury. No error was committed in the charge, and the judgment and order appealed from should therefore be affirmed, with costs.

O'BRIEN, J., concurs.